IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STONEY LEE SCHAEFFER, ) | |
| ) | Civil Action No.  06 - 1516 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Arthur J. Schwab |
| ) | Magistrate Judge Lisa Pupo |
| CORRECTIONAL OFFICER, SGT. W. ) | Lenihan |
| SCHAMP; CORRECTIONAL OFFICER, ) | |
| OFFICER - CYR ) | |
| ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I.      RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 23) be granted.

II.     REPORT

Plaintiff, Stoney Lee Schaeffer, an inmate previously confined at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Defendants in this action include correctional officers Sergeant W. Schamp and Cyr. Plaintiff alleges that Defendants violated his constitutional rights during an incident that occurred on September 26, 2006 and his subsequent confinement in a "hard cell" from September 25, 2006 to October 5, 2006.

## A. Standard of Review

Defendants have filed a motion for summary judgment. Under the Federal Rules of Civil Procedure, summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-

moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52).  If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.  Anderson, 477 U.S. at 249-50.

### B. Plaintiff's Allegations and Material Facts

On September 25, 2006, Plaintiff was housed in the Restricted Housing Unit (RHU) at SCI-Greene.  Plaintiff claims that on that date, he asked Officer Schamp for the RHU rules.  Schamp allegedly threw the RHU rules on the floor and told Plaintiff to "fish for them."  Some unknown time later, Officer Cyr escorted Nurse Sutton into the pod to distribute evening medications.  When they reached Plaintiff's cell, Plaintiff stuck his left arm out of the wicket[1] stated that he was "taking the pie hole hostage" until he received his RHU rules.  RHU rules mandate that only one pie hole can be open at a time and prohibit inmates from placing their hands or arms outside the pie hole during medication distribution.

---

[1] The wicket is a locked opening in each cell door that can be unlocked and opened to pass articles through to an inmate. It is usually used for distributing food, medication and incidentals to the prisoners. The common term for the wicket is the "pie hole."

3

Consequently, Officer Cyr ordered Plaintiff to remove his arm from the pie hole. Plaintiff refused and Officer Cyr hit Plaintiff's arm three times with his baton. While Cyr attempted to secure the wicket, Plaintiff grabbed the baton and pulled it into the cell injuring Cyr's left thumb when it hit the top of the wicket.

Shortly thereafter, Officer Schamp placed Plaintiff in cell FB-8, a "hard cell." Plaintiff claims that Schamp refused to give him his property from his old cell, FB-2, including his prescription medications. He further claims that he was placed in the hard cell for ten days with no mattress, no pillows, no soap, no toilet paper and no running water. He further claims that he received only one meal per day and no shower or recreation.

Defendants' records tell a different version of the incident. First, Plaintiff's medical records indicate that Schaeffer was taken to the medical department shortly after the incident where he informed the nurse that he was hit 2 times (as opposed to 3) with the baton (doc. no. 24-3, p. 46). The nurse noted 3 areas of abrasion on the left forearm underside but no evidence of any injury on the top of Plaintiff's left hand.

As a result of the incident, Plaintiff received a misconduct for assaulting an officer, refusing to obey an order and using abusive language and received one hundred and twenty (120) days disciplinary custody (doc. no. 24-2, p. 2). As part of the

DOC investigation, Plaintiff was interviewed by Security Lieutenant Craig Haywood and admitted the following.

> . . . I decided to take the food slot hostage during medication time. I told Cyr I'm not taking my hand in until you hand me those RHU rules. Cyr said take your hand in or I am going to hit you with this stick. He told me 1 or 2 times. He hit me three times and then used the stick to try and jab me. The stick came into my cell and I grabbed it pulling Cyr and the stick into the cell. I injured his thumb. I never tried to grab his belt and keys but I kind of wish I would have. I have no witnesses to the incident. They are all niggers, there were no white inmates on the pod.

Doc. 24-3, p. 8

With respect to the hard cell, Defendant Schamp averred that Plaintiff was housed in Cell FB-8 from September 25, 2006 until October 5, 2006 (doc. no. 24-4, p. 7). Cell FB-8 contained a mattress, soap and toilet paper, but no pillows. In addition, plaintiff had water at all times but was not permitted showers. (doc. 24-4, p. 8). Plaintiff received 3 meals each day in the hard cell, except on 3 occasions when he refused meals (doc. no. 24-4, pp. 7-14). In addition, Plaintiff received or had access to all of his medications while he was in the hard cell (doc. no. 24-4, pp. 2-5).

### C. Liability under 42 U.S.C. § 1983

Plaintiff asserts liability against Defendants pursuant to 42 U.S.C. § 1983. In order to assert liability under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must

5

allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff's claims invoke the protections of the Eighth Amendment, which protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In addition, the Cruel and Unusual Punishments Clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers. Whitley v. Albers, 475 U.S. 312, 318-19 (1986).

Every Eighth Amendment claim embodies both an objective and a subjective component. The objective component relates to the "seriousness of the injury" and focuses on whether there has been a deprivation or infliction of pain serious enough to implicate

6

constitutional concerns. Hudson v. McMillan, 503 U.S. 1, 9 (1993). An inmate must show some injury in order to make out a constitutional violation under the Eighth Amendment. The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (1993) (quotations omitted).

The subjective component requires inquiry into the defendant's state of mind to determine whether the infliction of pain was "unnecessary and wanton." *Id*. at 6-7. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." Whitley v. Albers, 475 U.S. 312, 322 (1986).

1. Excessive Force

In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21 (quotation omitted). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity

of a forceful response. Hudson, 503 U.S. at 7 (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. *Id*.

With respect to the September 25, 2006 incident, Plaintiff claims that Defendant Cyr hit him three times with the baton. However, the undisputed medical evidence does not verify that Plaintiff suffered an objectively serious injury as a result of Defendant Cyr's alleged actions. The medical evidence shows abrasions to the underside of Plaintiff's arm but the record specifically notes "Top of left hand has no redness or swelling. Can move fingers without problem. No other injuries claimed or seen." (Doc. no. 24-4, pp. 45, 50-51.)This is further supported by the videotape of the medical examination viewed by the Court and attached to the Motion as Exhibit J.

"A non-moving party may not rest upon mere allegations, general denials or vague statements." Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (internal quotations omitted). The inquiry is whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. Anderson, 477 U.S. at 252. Plaintiff has failed to show that he suffered any alleged injury that was objectively "harmful enough" to establish a constitutional violation under the Eighth Amendment. "Not every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973). The absence of any significant injury supports a conclusion that the force used with respect to the instant action was *de minimis*. *See* Reyes v. Chinnici, 54 Fed. Appx. 44, 2002 WL 31546515 (3d Cir. Nov. 18, 2002) (holding that the degree of a prisoner's injury can be taken into account by a federal district court in granting summary judgment to a corrections officer where the degree of force used was so minor that the court safely could assume that no reasonable person could conclude that the corrections officer acted maliciously and sadistically).[2]

Notwithstanding, even if the Court were to conclude that the record evidence shows that Plaintiff sustained a constitutionally significant injury for purposes of an excessive force claim, a holding the court does not make, Plaintiff has not demonstrated that Defendant Cyr acted with deliberate indifference.

---

[2] *Accord* Hill v. Kelly, 1997 WL 638402 (E.D. Pa. 1997) (bruise and a cut on his thumb as a result of the door closing on his thumb is the kind of *de minimis* imposition with which the Constitution is not concerned; no reasonable jury could find in favor of excessive force claim); Barber v. Grow, 929 F. Supp. 820 (E.D. Pa. 1996) (some cuts and bruises to arm and knee suffered from guard pulling chair out from under inmate presents no set of facts that a reasonable jury could find intentional wanton behavior); Collins v. Bopson, 816 F. Supp. 335 (E.D. Pa. 1993) (injuries of cuts over his eyes and abrasions on wrists from handcuffs with no evidence of follow-up treatment failed to present the court with evidence on which a jury could return a verdict in his favor).

Plaintiff admitted that he purposefully took the pie hole hostage knowing that no other medications could be dispensed until his pie hole was closed. He admitted that he disobeyed a direct order to remove his hand from the food slot. Defendant Cyr's response in hitting Plaintiff's hand, even three times, was a reasonable response to the threat posed by Plaintiff's actions. *See, e.g.*, Cowans v. Wyrick, 862 F.2d 697, 699 (8th Cir. 1999) (noting that "reasonable measures undertaken to resolve a disturbance when the disturbance indisputably poses significant risks to the safety of inmates and prison staff do not rise to the level of cruel and unusual punishment" and recognizing that an inmate's refusal to shut his food service door when directed to do so was such a disturbance because a significant security threat was posed); Boyd v. Selmer, 842 F. Supp. 52 (N.D.N.Y. 1994) (holding that the force applied by officers in compelling inmate to remove his hand from feed-up flap, which consisted of striking inmate three to four times with their batons, was not excessive under the circumstances). *See also* Blackburn v. Department of Corrections, 172 F.3d 62 (Table), 1999 WL 94912 (10th Cir. Feb. 25, 1999) (no excessive force when corrections officer struck inmate with baton during cell shakedown); Burkins v. Rudloff, 2002 WL 31016514 (N.D. Tex. Sep. 6, 2002) ("A police officer's use of force, including striking a person fleeing from an attempted arrest with a

10

flashlight or baton can neither be categorized as an excessive use of force, nor force which was objectively unreasonable.").

> When the ever-present potential for violent confrontation and conflagration ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. <u>Accordingly, . . ., courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury</u>.

<u>Whitley</u>, 475 U.S. at 321-322 (emphasis added) (internal quotations and citations omitted).

The record evidence in this action, viewed in the light most favorable to the plaintiff, does not support a reliable inference of wantonness in the infliction of pain under the Eighth

11

Amendment. Accordingly, Defendant Cyr is entitled to summary judgment in this action.

2. <u>Conditions of Confinement</u>

Plaintiff further alleges that the conditions of his confinement in Cell FB-8 violated the Eighth Amendment prohibition against cruel and unusual punishment. Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. <u>Hutto v. Finney</u>, 437 U.S. 678, 686 (1978); <u>Spaight v. Coughlin</u>, 104 F.3d 350 (Table), 1996 WL 518507 (2d Cir. 1996), *cert. denied*, 117 S.Ct. 972 (1997); <u>Young v. Quinlan</u>, 960 F.2d 351, 363 (3d Cir. 1992); <u>Sheley v. Dugger</u>, 833 F.2d 1420, 1428-29 (11th Cir. 1987); <u>Gibson v. Lynch</u>, 652 F.2d 348, 352 (3d Cir. 1981) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment") (citing <u>Hutto</u>), *cert. denied*, 462 U.S. 1137 (1983).

The Constitution does not mandate comfortable prisons. <u>Rhodes</u>, 452 U.S. at 349. Prisons housing "persons convicted of serious crimes cannot be free of discomfort." *Id*. *Accord* <u>Griffin v. Vaughn</u>, 112 F.3d. 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).

12

Plaintiff claims that he was placed in a hard cell for ten days without a mattress, soap, toilet paper, running water, legal supplies, his prescription medication and only received one meal a day. Aside from his claims of lack of food and medical treatment, discussed below, Plaintiff's conditions of confinement claims do not constitute cruel and unusual punishment. *See* Rivera v. Pennsylvania Dept. of Corrections, 837 A.2d 525, 530-532 (Pa. Super. 2003). *See also* Allebach v. Sherrer, 2005 WL 1793726 (D.N.J. July 27, 2005) (holding that denial of running water, religious items, visitation, recreation, use of the telephone, mattress and clothing for thirty-six (36) days was not cruel and unusual punishment under the Eighth Amendment).

Moreover, the record reflects that Plaintiff received three meals each day in the hard cell, except on 3 occasions when he was hiding under his bed or had his light covered (doc. no. 24-4, pp. 7-14). Finally, the record shows that Plaintiff received his prescription anti-convulsant medication Valproic Acid at bedtime during the entire time he was in the hard cell except on one occasion when Plaintiff refused his medication (doc. no. 24-4, pp. 2-5). In addition, Plaintiff was on "self-medication" status for two of his prescription medications – Enalapril (blood pressure) and HCTZ (fluid retention). In this regard, he was given bubble packs of these medicines to keep in his cell while in the RHU. Plaintiff subsequently obtained refills for his two

self-medication bubble packs on the dates they were due to run out – October 6 for the Enalapril and October 18 for the HCTZ. In order to obtain a refill, the inmate must produce an empty pack. Finally, there is no record evidence that Plaintiff suffered any actual injury as a result of not taking his bubble pack medications for ten days.

In his response to Defendants' Motion, Plaintiff did not offer any explanation concerning the refilling of his self medications. In fact, he did not dispute the record facts offered by Defendants concerning his receipt of any of his medications. Nor did he offer any evidence to support his claim that he was denied medication. In this instance, no reasonable juror could conclude that Defendant Schamp was deliberately indifferent to Plaintiff's serious medical needs. Consequently, Defendant Schamp is entitled to summary judgment as to Plaintiff's claims concerning his confinement in hard cell FB-8.

## III. CONCLUSION

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 23) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to

respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

May 28, 2008

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc: The Honorable Arthur J. Schwab
United States District Judge

Stoney Lee Schaeffer
DW-8560
S.C.I. Albion
10745 Route 18
Albion, PA 16475-0002